AO 106 (Rev. 04/10)  Application for a Search Warrant

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

FEB 27 2025

MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
### for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

1220 N Reymond Street, Las Cruces, New Mexico,
88005, and Seizure of Weapons, Ammunition, and
Electronic Devices

)
)
)
)
)
)

Case No. 25MR348

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

1220 N Reymond Street, Las Cruces, New Mexico, 88005, more fully described in Attachment A, which is attached and incorporated herein.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922 (g) (5) | Illegal Alien, illegally or unlawfully in the United States to possess a firearm and/or ammunition |

The application is based on these facts:
See Affidavit in Attachment C, attached and incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

BRIANA R VIGIL  Digitally signed by BRIANA R VIGIL
Date: 2025.02.25 14:23:08 -07'00'

*Applicant's signature*

Briana R Vigil, Special Agent HSI
*Printed name and title*

Electronically submitted and telephonically sworn

Date:  February 27, 2025

City and state:  Las Cruces, NM

*Judge's signature*

**Gregory B. Wormuth**    Chief U.S. Magistrate Judge
*Printed name and title*

## Attachment A

### Description of the Residence located

1220 N. Reymond Street, Las Cruces, New Mexico 88005, specifically, the second residence on the property located to the rear and right of the first residence. The second residence is a single-story house with tan colored exterior walls, brown pointed roof identical to the main house in front, and blue trimming. There are wood columns in the front of the house and what appears to be a white porch connecting to the main house. The main house has the numbers "1220" painted in the front on the curb.





(Main house on property)

GBW

This warrant authorizes the onsite forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B. During the execution of the search of the premises described in Attachment A, law enforcement personnel are also specifically authorized to compel Cristhian Adrian Ortega-Lopez, Juan Manuel Acevedo-Leon and Efren Jose Montilla-Castillo to provide biometric features, including pressing fingers (including thumbs) against and/or putting a device in front of a face, or any other security feature requiring biometric recognition, of:

      a.     any of the devices found at the premises, and

      b.     where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments, for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

          This warrant does not authorize law enforcement personnel to compel any other individuals found at the premises to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device.

This warrant does not authorize law enforcement personnel to require that Cristhian Adrian Ortega-Lopez, Juan Manuel Acevedo-Leon and Efren Jose Montilla-Castillo state or otherwise provide the password or any other means that may be used to unlock or access the devices, including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

GBW

## ATTACHMENT B

Items to be seized:

1.      Any and all evidence from the **PREMISE and PERSONS**, described in Attachments A (1-3), of violations of:

- 18 U.S.C § 922(g)(5) Possession of a Firearm and / or Ammunition by an alien who is illegally or unlawfully in the United States.

2.      Including, but not limited to:
a. Firearms
b. Firearms parts and accessories
c. Ammunition and ammunition components
d. Documents or items associated with or revealing the ownership, possession, acquisition, receipt, disposition, or registration of firearms or firearm parts
e. United states currency, financial instruments, stocks, or bonds that are proceeds of the listed violations.
f. Financial records including bank statements, cancelled checks, deposit records, check stubs, payment ledgers, checkbook registers, deposit slips, loans, documentation of assets and liabilities, general ledgers, general journals, cash receipts, cash disbursement journals, accounts receivable journals, accounts payable journals, contracts, billing information, wire transfer records, and records of bills relating to the receipt of currency or other forms of payment.
g. Papers, records, documents, files, notes, memos, mail, or other materials representing residency, ownership, occupancy, dominion, or control of the premises or vehicle referenced above and described in Attachments A(1-2).
h. Records or keys showing possession of safe deposit boxes, safes, storage units, and any other type of storage areas, including passwords and/or access codes for access during the searches.
i. Computers, storage media, or digital devices used as a means to commit the violations described above, including, but not limited to cell phones, laptop and desktop computers, hard drives, thumb drives, and other miscellaneous storage media.
j. Any Additive Manufacturing (3D Printing) materials constituting evidence of the illegal manufacturing of NFA controlled weapons, including, but not limited to 3D printers, computers or storage media connected to 3D printers, additive material (filament) being used with 3D printer.
k. Any locked or closed safes, safety deposit boxes, or containers believed to contain any of the above listed evidence.

GBW

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 1220 N. REYMOND STREET, LAS CRUCES, NEW MEXICO, 88005, AND SEIZURE OF WEAPONS, AMMUNITION AND ELECTRONIC DEVICES | Case No. 25MR 348 <br><br> **Filed Under Seal** |

### ATTACHMENT C
### AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Briana Vigil, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41(c)(4) of the

Federal Rules of Criminal Procedure for a warrant to search the premises located at 1220 North

Reymond Street, Las Cruces, New Mexico 88005, specifically, the second residence on the

property located to the rear and right of the first residence, hereinafter "Premises," further

described in Attachment A, for purposes of searching for and seizing the items described in

Attachment B.

2.      I am a Special Agent (SA) with the Homeland Security Investigations (HSI) and

have been so since April 2024.  As part of the training to become an HSI Special Agent, I

attended six months of specialized training sponsored by the Federal Law Enforcement Training

Center in Glynco, Georgia. I am currently assigned to the Border Enforcement Security Task

Force investigative group in Las Cruces, New Mexico.  As such, I am a "federal law enforcement

officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a

government agent engaged in enforcing the criminal laws and duly authorized by the Attorney

General to request a search warrant.

3.      Prior to becoming an HSI Agent, I was employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) as an Industry Operations Investigator and the Drug Enforcement Administration (DEA) as an Investigative Assistant. In these capacities, I was involved in complex federal investigations concerning drug trafficking, illegal firearms possession, and the enforcement of federal regulations related to the firearms industry. I assisted in identifying, investigating, and enforcing laws related to the illegal possession of firearms by prohibited persons, as well as the trafficking and distribution of controlled substances. This experience has provided me with a thorough understanding of firearms regulations and drug enforcement practices.

4.      The following information contained in this affidavit, your affiant has gained through investigation as well as your affiant's own experience, training, and information provided by other law enforcement agents who your affiant believes to be reliable. Since this affidavit is being submitted for the limited purpose of securing a search warrant, your affiant did not include each and every fact known concerning this investigation. I have set forth only those facts that your affiant believes to be necessary to establish probable cause for a search of the Premises. Your affiant makes this Affidavit based on personal knowledge and on the basis of information received from other law enforcement officers and/or agents.

5.      As will be shown below, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922 (g)(5), for an illegal alien, illegally or

unlawfully in the United States to possess a firearm and/or ammunition are currently located at the Premises. Your affiant submits this affidavit in support of a search warrant authorizing a search of the Premises, which is described in Attachment A. Your affiant requests authority to search the Premises, including the residential dwelling, vehicles on the premises, vehicles associated to the targets that are parked on the street in relation to the premises and any location within these locations where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

## IDENTIFICATION OF THE PLACE TO BE SEARCHED AND THE ITEMS TO BE SEIZED

6.      The property to be searched is located at 1220 Reymond Street, Las Cruces, New Mexico, 88005, specifically, the second residence on the property located to the rear and right of the first residence, fully described in Attachment A. Items to be seized are any firearms, ammunition, cell phones, electronic devices/storage and any other evidence described in Attachment B.

7.      The applied-for warrant would authorize the forensic examination of any electronic devices seized, for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTE

8.      This investigation concerns certain activities relating to the alleged violation of Title 18 U.S.C. § 922 (g)(5), which makes it unlawful for an alien, illegally or unlawfully in the

United States, to possess a firearm and/or ammunition.

## DETAILS OF THE INVESTIGATION

9.      Based on the investigation, there is probable cause to believe, Cristhian Adrian Ortega-Lopez (hereinafter "Subject 1"), an illegal alien from Venezuela, is in possession of firearms in violation of federal law. According to Form I-831, Notice to Appear, the Subject was encountered and placed under arrest on December 15, 2023, due to the determination that Subject 1 had unlawfully entered the United States and was not at the time inspected or admitted by an Immigration Officer at a port of entry. Subject 1 was processed for a Notice to Appear and released on his own recognizance in accordance with Section 212(a)(6)(A)(i)(I) of the Immigration and Nationality Act due to humanitarian and safety concerns arising from overcrowding and is pending removal proceedings. On April 24, 2024, Subject 1 requested relief from removal, which will be considered by the Immigration Judge.  Subject 1 is still currently pending removal proceedings.  According to Subject 1's biographic data, he listed the Premises as his address, thereby establishing a connection to the location and confirming his residence there.

10.     Subject 1 is an illegal alien pending removal proceedings and is not authorized to possess firearms or ammunition under Federal Law I have probable cause to believe that Subject 1 has unlawfully obtained and is currently in possession of firearms, in violation of 18 U.S.C. § 922 (g)(5), which prohibits the possession of firearms or ammunition by individuals who are not legally in the country.

4

11.     On January 14, 2025, Homeland Security Investigations (HSI) Las Cruces office received a tip from the HSI Tip Line from an anonymous source of information (SOI) who wished to remain unidentified due to concerns for their safety and fear of retaliation. The SOI claimed Subject 1 and two additional Venezuelan illegal immigrants are residing at the Premises, specifically, in the secondary living quarters located at the rear of the property east of the main house.  The SOI disclosed to your affiant that Subject 1 and other illegal aliens work for the family living at the main residence at the property where the Premises is located and receive firearms and housing in return.  The SOI stated Subject 1 is in possession of firearms and that Subject 1 told the SOI he received a firearm from the family living at the main residence as a Christmas gift in 2024.  Subject 1 and the other illegal aliens may be affiliated with a gang according to the SOI, but the SOI was uncertain of the specific gang affiliation.

12.     Based on the investigation, Nancy and Jose L. Cano, United States Citizens (USCs), have been identified as the owners of the Premises verified through the Dona Ana County Assessor's Office and corroborated through surveillance. During surveillance conducted at the Premises, a Lexus SUV was observed on-site.  A subsequent query of the vehicle's license plate confirmed the vehicle being registered to Nancy Cano, with the registered address corresponding to the Premises.

13.     The SOI has observed Subject 1 post photos and videos on his personal social media accounts depicting himself in possession of firearms. The SOI believes the location of those videos and photos to be near or at the Premises because they have seen bicycles that

Subject 1 and the other Venezuelans ride parked in front of the premises. The information provided by the SOI was independently corroborated by law enforcement through social media posts made by Subject 1. The posts showed Subject 1 at or near the Premises based on law enforcement surveillance observations. Subject 1 has posted photos on his personal Facebook account of himself, Juan Manuel Acevedo-Leon (hereinafter "Subject 2"), Efren Jose Montilla-Castillo (hereinafter "Subject 3"), and Jhordan Alehandro Santeliz-Lugo (hereinafter "Subject 4"). The listed individuals have been identified as illegal aliens from Venezuela. Subject 2 and Subject 3 are believed to live with Subject 1, at the Premises. On October 20, 2024, Subject 1 posted an image on his secondary personal Facebook of himself, Subject 2, Subject 3, and Subject 4 pictured with Jose Cano at what is believed to be at or near the Premises (Exhibit 1).

14.    Subject 1 has also posted photos of himself at April Cano's residence, located at 1200 N. Reymond Street, Las Cruces, New Mexico. April Cano lives adjacent to the Premises, positioned on the south side. This address was confirmed to be April Canos' residence based on surveillance conducted by law enforcement who observed a black Dodge Charger in close proximity to the premises. A law enforcement records check of the vehicle's license plate revealed the registered owner, April Cano, resides at the location. April Cano has been identified as Nancy and Jose Cano's daughter who is a well-known social media influencer and a gun enthusiast.

15.    The following details images discovered on Subject 1's social media accounts by law enforcement, in which Subject 1 is observed handling, displaying, and in possession of

various firearms and firearm ammunition on several occasions at the Premises and other locations.

16.    On December 24, 2024, Subject 1 posted a photo of himself wearing a black ballistic style helmet with night vision goggles attached to the front. Subject 1 was holding a camouflage in color AR-15 style rifle with an optic, silencer, foregrip, and flashlight attachments. The tactical equipment and firearm appeared to be equivalent to that of military or SWAT operators. The photo was taken inside of April Cano's residence, near a Christmas Tree. (Exhibit 2). On the same date, Subject 1 posted two videos on Facebook. In one of the videos, Subject 1 is passing the identical firearm to Nancy and Jose Cano, where he refers to them as "Patron" and "Patrona." Although Subject 1's face cannot be seen in the video, law enforcement observed Subject 1's left hand and sleeve of the same shirt he was wearing in the photo of him holding the firearm. In the second video, Subject 1 posted a video of a still image of a hand holding two riffle magazines loaded with ammunition in front of a Christmas tree. Law enforcement has identified both the photo, and two videos were taken in the same residence. Based on law enforcements investigation and surveillance, the two videos and photo were taken in the front room of April Cano's residence, next to the front door based on the layout of the house, windows and colors of the doors. These social media posts, uploaded by Subject 1, corroborate the information provided by the SOI, who stated that Subject 1 had said he received a firearm for Christmas from the Cano Family (Exhibit 3).

7

17.    A review of April Cano's public Instagram account shows that she posted a photo on December 29, 2024, holding an AR-15 style rifle.  The AR-15 style rifle that April Cano has possession of in the photo on Instagram appears to be identical to the AR-15 style rifle that Subject 1 posted of himself holding in front of a Christmas tree on December 24, 2024, at April Cano's residence (Exhibit 4).

18.    On December 24, 2024, Subject 1 also posted a photo on his Facebook account featuring a tactical helmet identical to the one worn in the aforementioned image with him holding the firearm.  The image shows the tactical helmet sitting on a skull mannequin head placed on a table with Nancy Cano and April Cano in the background. Based on the color and identification of the door seen in the background of the image, it can be inferred that the photograph was taken at April Cano's residence. The presence of Nancy Cano and April Cano in the photograph suggests they were at April Cano's residence with Subject 1 at the time the photo was taken (Exhibit 5).

19.    On December 30, 2024, Subject 1 posted photos and a video on his Facebook account featuring himself and the other Venezuelan illegal aliens, at what appears to be the Butterfield Trail Shooting Range in Las Cruces, New Mexico, in possession of firearms and a large amount of handgun ammunition and rifle ammunition. The images listed below, posted by Subject 1 on December 30, 2024, were retrieved from Subject 1's Facebook account.

a.  In one image, Subject 1 is observed holding a dark in colored AR-15 style rifle in one hand and a black semi-automatic handgun in his other hand. (Exhibit 6)

b.  A second image contained a photo showing a hand holding miscellaneous caliber ammunition and what appears to be larger amounts of the same type of ammunition in open containers in the background. (Exhibit 7)

c.  In an additional photo posted on Subject 1's Facebook, Subject 1 is observed holding a black semi-automatic handgun, which appears to be identified as a Sig Sauer P365 handgun, while Subject 3, identified as an illegal alien, is holding another semi-automatic handgun with an optic in his hand.  The individuals' faces are not visible in the photograph, but they have been identified by both of their visible hand tattoos and the watches they have worn in other photos. Based on the detailed photo, the handgun Subject 1 is holding is a handgun featuring an aftermarket frame. On the same date, December 30, 2024, April Cano posted a photo of a firearm to her Instagram which appears to be the same handgun that is depicted in Subject 1's photo.  (Exhibit 8)

d.  A video posted by Subject 1 on his Facebook account shows him shooting an AR-15 style rifle with a suppressor. The AR-15 style rifle was confirmed to be a firearm with some type of attached suppressor based on the video. The video depicts Subject 1 discharging the AR-15 style rifle in the beginning, followed by the replacement of the magazine with a new one, after which he proceeds to continue firing the weapon with a silenced report clearly audible from the shot. A projectile can be observed and heard striking the metal silhouette targets down range.   Subject 1 has been positively identified

9

in the video based on his distinctive tattoos, including tattoos on his left hand and left arm which are visible in the video. (Exhibit 9) The correlation of Subject 1 and April Cano's social media post both on December 30, 2024, particularly the showcase of the same firearm, equipment, and possible location, suggests a close relationship between the content shared by Subject 1 and April Cano.

20.     On July 28, 2024, Subject 1 posted to his Facebook account a video, also referred to as a Facebook reel, that included three images. One of the images that is included in the reel is a photo of Subject 1 (identified by his tattoos) holding a black AR-15 style rifle with a large scope. Your affiant believes that Subject 1 is located at April Cano's residence, as indicated by the visible presence of what appears to be April Cano's vehicle in the background. Additionally, further observations suggest that the Premises is visible in the background, identifiable by the wall that separates the two properties and a patio with a white object hanging from the side that law enforcement have observed on surveillance. (Exhibit 10)

21.     Subject 1 has been identified on social media platform, TikTok under the username, "@cristianortega1526." In videos posted by Subject 1, he is observed in possession of firearms, with the recordings believed to have taken place at the Premises, as indicated by the presence of bunk beds and a Venezuelan flag visible in the background. On August 18, 2024, Subject 1 posted a video of himself with a mask on, inserting what appears to be a gun into his pants. On September 11, 2024, Subject 1 posted a video of himself dancing and subsequently

10

drawing out what appears to be a rifle with an attached drum magazine.  Subject 1 has been identified in both videos due to distinct tattoos visible on his body. (Exhibit 11)

22.     On February 3, 2025, surveillance was conducted at the Premises. During the surveillance, your affiant observed an individual matching the description of Subject 1, exit from the gate located at the north side of the property. The individual was walking from the rear of the property to the front of the primary residence. The individual waited at the front door of the primary residence located on the west side of the structure before being let in. The individual was a younger Hispanic male with a thin build and wearing a flat bill baseball hat similar to the hat's worn by Subject 1 in his social media posts. Additionally, surveillance was conducted on February 18, 2025, at the Premises.  During the surveillance, your affiant observed a silver Chevy SUV bearing the license plate "BPXH78" park at the Premises.  A couple minutes later, your affiant observed three younger Hispanic males exit from the south side of the Premises and enter the Chevy SUV.  The observations during the surveillance operations further corroborates the SOI's claim and strengthens the evidence that Subject 1, Subject 2 and Subject 3 are residing at the Premises.

23.     On February 19, 2025, Subject 2, the individual identified living with Subject 1 at the Premises, was identified on TikTok as "@el..juanpi." Law Enforcement observed Subject 2 on his TikTok account displaying tattoos and clothing that are commonly associated with Tren de Aragua (TdA), a transnational criminal organization and U.S. designated Foreign Terrorist Organization from Venezuela.  Subject 2 was observed in his videos displaying TdA related

11

tattoos, including the number "23" on his chest, what appears to read "Hasta la Muerte" on his neck, and a rose on his torso underneath his armpit area, all of which are commonly associated with TdA. Additionally, Subject 2 was observed wearing clothing bearing the Chicago Bulls logo and a hat with a crown, which further aligns with the apparel associated with TdA members.

24.     Upon further investigation of the social media accounts of Subject 1 and Subject 3, Agents identified additional videos and photographs that displayed clear indicators of TdA affiliation. Subject 1, identified as "@cristianortega1526" and Subject 3, identified as "efrencastillo621" on TikTok, are seen in several videos, wearing clothing or positioned in front of backgrounds featuring symbols linked to TdA such as the crown. Additionally, Subject 1 and Subject 3 are observed with matching tattoos, the designs of which are questionable to TdA association and are also seen displaying hand gestures commonly recognized as TdA signs.

25.     Subject 1, Subject 2, Subject 3's images and videos provide substantial evidence of their affiliation with TdA. The visual indicators observed are fully consistent with existing intelligence of TdA, providing strong evidence of Subject 1, Subject 2, and Subject 3's involvement with the Foreign Terrorist Organization from Venezuela.

26.     Accordingly, your affiant believes probable cause exists to search 1220 North Reymond Street, Las Cruces, New Mexico 88005, specifically, the second residence on the property located to the rear and right of the first residence, more fully described in Attachment A. This warrant only seeks authorization to takes devices that belong to Subject 1, Subject 2 and Subject 3 or that Subject 1, Subject 2 and Subject 3 have access to that Subject 1, Subject 2 and

Subject 3 could store evidence of violations of Title 18 U.S.C. § 922 (g)(5), for an illegal alien, illegally or unlawfully in the United States to possess a firearm and/or ammunition.

27.    Special Agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) were contacted in reference to the case and advised that Sig Sauer P365 firearms are not manufactured in the state of New Mexico and therefore would have traveled in and affected interstate commerce.  Similarly, the ATF Special Agents further advised that components making up ammunition, specifically gun powder, are not commercially manufactured in the state of New Mexico and therefore would have traveled in and affected interstate commerce.

28.    Accordingly, this warrant also seeks authorization to take and seize any electronic devices on Cristhian Adrian Ortega-Lopez, Juan Manuel Acevedo-Leon and Efren Jose Montilla-Castillo's person, even if they are not within the residence, at the time this warrant is executed.

## BIOMETRIC ACCESS TO DEVICES

29.    I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password.  These biometric features include fingerprint scanners, facial recognition features and iris recognition features.  Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

13

a.      If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints.  For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device.  Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device.  The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

b.      If a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face.  For example, this feature is available on certain Android devices and is called "Trusted Face."  During the Trusted Face registration process, the user holds the device in front of his or her face.  The device's front-facing camera then analyzes and records data based on the user's facial characteristics.  The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face.  Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Trusted Face.

c.      If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises.  For example, on certain Microsoft devices, this feature is called "Windows Hello."  During the Windows Hello registration,

14

a user registers his or her irises by holding the device in front of his or her face. The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises. The device can then be unlocked if the infrared-sensitive camera detects the registered irises. Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

       d.      In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

       e.      As discussed in this Affidavit, I have reason to believe that one or more digital devices will be found during the search. The passcode or password that would unlock the devices subject to search under this warrant currently is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the devices, making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.      I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled.  This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time.  For example, Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked; or, (2) when the device has not been unlocked using a fingerprint for 8 hours *and* the passcode or password has not been entered in the last 6 days.  Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

g.      Due to the foregoing, if law enforcement personnel encounter any devices that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, I request permission to: (1) press or swipe the fingers (including thumbs) of any adult at that residence who has access to electronic devices to the fingerprint scanner of the devices found at the Premises; (2) hold the devices found at the Premises in front of the face of any adult at that residence who has access to electronic devices and activate the facial recognition feature; and/or (3) hold the devices found at the

16

Premises in front of the face of any adult at that residence who has access to electronic devices and activate the iris recognition feature, for the purpose of attempting to unlock the devices in order to search the contents as authorized by this warrant. The proposed warrant does not authorize law enforcement to request that any adult at that residence who has access to electronic devices state or otherwise provide the password or any other means that may be used to unlock or access the devices. Moreover, the proposed warrant does not authorize law enforcement to ask any adult at that residence who has access to electronic devices to identify the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

30.     *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

17

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.   I know that when an individual uses an electronic device to post videos and images to social media, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

31.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19

32.    Based on the foregoing information, I have probable cause to believe that evidence of crime, contraband, fruits of a crime, other items illegally possessed, and property designed for use, intended for use or used in committing a crime, that is, committing a violation of Title 18 U.S.C. § 922 (g)(5), which makes it illegal for an alien, illegally or unlawfully in the United States, to possess a firearm and/or ammunition, as set forth herein and in Attachment B, are currently located at 1220 North Reymond Street located in Las Cruces, New Mexico.  I, therefore, respectfully request that a search warrant be issued authorizing the search for, seizure of, and search of, the items set forth in Attachment B.

## RETENTION OF IMAGE

33.    The government will retain a forensic image of each electronic storage device subjected to *analysis* for a number of reasons, including proving the authenticity of evidence to be used at trial; responding to questions regarding the corruption of data; establishing the chain of custody of data; refuting claims of fabricating, tampering, or destroying data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

## REQUEST FOR SEALING

34.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because premature

20

disclosure of the contents of this Affidavit and related documents may have a significant and

negative impact on the continuing investigation and may severely jeopardize its effectiveness.


## **CONCLUSION**

35.    I submit that this affidavit supports probable cause for a search warrant

authorizing the search of the Premises described in Attachment A to seek the items described in

Attachment B.

36.    Assistant United States Attorneys Maria Armijo and Ryan Ellison reviewed and

approved this search warrant application.

37.    I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge.

Respectfully submitted,

BRIANA R VIGIL Digitally signed by BRIANA R VIGIL
Date: 2025.02.27 12:00:28 -07'00'

Briana R. Vigil
Special Agent
Homeland Security Investigations


Subscribed electronically and sworn telephonically
to me on this _____February 27, 2025_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

21

**Exhibit 1**



**Exhibit 2**



**Exhibit 3**







3

**Exhibit 4**





**Exhibit 5**



**Exhibit 6**



**Exhibit 7**



**Exhibit 8**



**Exhibit 9**



**Exhibit 10**



**Exhibit 11**


